The next matter, number 25-1672, Deborah Goulart et al. v. Cape Cod Healthcare, Inc. At this time, would counsel for the appellants please come to the podium and introduce herself on the record to begin. May it please the court, Kelsey White on behalf of the plaintiff's appellants. May I reserve two minutes for rebuttal, please? You may. Thank you. Your Honors, the district court erred here in two ways. Misapplying the 12b-6 standards and imposing incorrect requirements for what it takes to plead an allegation of the Wiretap Act. Subject to the court's questions, I'm going to cover the district court's determination that there was a commercial purpose for what Cape Cod did here. Then the district court's alternative holding that there are not actually two acts here, that there's just one act. And then lastly, I'd like to talk a little bit about Cape Cod and some of the amici's absurd results arguments. On the advertising commercial purpose determination that the court made, there's several problems with this. The first one is that in this instance, a commercial purpose is a criminal purpose because of the criminal provisions of the HIPAA statute. What the Wiretap Act requires is that there is an intentional interception for the purpose of committing a criminal retortious act. What the district court did was decide, based on the pleadings, that actually Cape Cod only had a commercial purpose. The problem is that the HIPAA statute that we cited, that the district court never addressed, actually describes how HIPAA criminal violations can exist when a covered entity knowingly discloses protected health information with increased penalties when that is done for a commercial purpose. The other thing is that perhaps on a 12v6 motion, the district court could not make this analysis. It's like saying either you're negligent or you're criminally liable. Based on the complaint, you can't do that. That's exactly correct, Your Honor. In some of the cases that Cape Cod cited, in the context of suppression, so when the Wiretap Act is coming up in the context of recordings being suppressed, those are evidentiary hearings where a district court is deciding what the purpose of making the recording is based on hearing evidence. This is similar to the analysis that the District of Minnesota did in the In Re Group health litigation case. What Cape Cod's purpose was will be litigated, and there will be summary judgment and potentially a trial on that. But the complaint alleges that the recording, the interception, occurred for a criminal retortious purpose. It could be both. That is in the evidentiary hearing context of the suppression cases. Courts are deciding, and that's where this primary motivation, determinative factor test came from, is from courts sitting in suppression hearings and hearing evidence about why a recorder intercepted a communication. But at this juncture, the district court couldn't make that finding. I am curious about that Cassier invest language on the primary motivation or determinative factor. What is there in the complaint that suggests that not just the ñ well, that the disclosure itself was their primary purpose, as opposed to the benefits that they would receive, which some of the language, I get what they're saying on commercial, but it seems a little inartful sometimes. But I think the key question is, what did you say as to their real purpose was disclosing, as opposed to getting some sort of benefits for how their web page functions and et cetera? So, Your Honor, to directly answer your question, I think one part of the complaint that's helpful here is Appendix 795, Paragraph 239. And this is where we allege that Cape Cod could not have gotten the marketing benefits that it got from the PIXUL tool without disclosing this information. They couldn't do it without doing that, but does that get you far enough? That's where I want to take a step back, because the premise of your question teases two things apart that actually can't be taken apart. Because the only way for Cape Cod to get the advertising benefits is through the disclosure. And we do plead this in a variety of places, but the court could look at Appendix 760, 756, 786 through 87. Cape Cod, for example, required that first-party cookies be enabled in order to log on to the patient portal. The code disguised third-party cookies as first-party cookies. So the code, which Cape Cod decided which pages to put it on, and it was warned by Google and Facebook. That's at Appendix 750 and 776 and 763. Both Google and Facebook warned that this should not be used for health purposes. And Facebook says that Metapixul is a personal identifier tool. So when you put all of that together, those allegations certainly would support inferences. A jury could conclude that Cape Cod knows that it's disclosing this information to get the marketing benefits. And so there would be no... Well, you're not going to a jury. You're saying you're going past the 12B6 stage until you discover it. Correct. I mean, if we got to that point. But I guess what I'm struggling with a little bit is, yes, there's allegations in there that they know that this disclosure is going to happen. But it seems a little different to be disclosing, knowing that you're disclosing, in order to get some secondary benefit for yourself than it is to disclose in kind of the classic context where, let's say blackmail is occurring, where the disclosure itself is kind of the driving purpose. They're disclosing it in order to harm somebody. And so that's the finesse that I'm not quite seeing in the complaint. So, Your Honor, I think what I'd point the court to, then, is this may not be that close to blackmail. But I think I'd say it's fairly closer to corporate espionage. And in the legislative history, we see stealing, trade secrets, and even the amici say that the wiretap act is for things like blackmail or corporate espionage. And that is where we're getting closer to the finesse you're describing. Because a company spying on another company is doing so to commercially benefit itself, advance itself. And so that is different from blackmail. There's a motive there to compete unfairly. And this actually maps somewhat closely onto that, except rather than spying on a competitor, there's a disclosure of the patient's information. And it sort of begs the question, if wiretap act can cover corporate espionage, why are corporations' communications, if they're getting recorded and then used for competitors' commercial advantage, why is that more protected than a patient's information here? And so I understand that blackmail is a little bit of a different nature, but the wiretap act is supposed to cover more than blackmail. And that stealing business secrets comes from legislative history that Cape Cod and the amici are putting forth to the court about why there should be a standard here that we can't meet. And based on the way the suppression cases analyze this issue, I certainly think that the pleading meets that standard. A couple points on the absurd results argument. I'm sorry, say that again. A couple of points on what? On the absurd results argument. Before you get to that, I thought your primary argument was that the purpose went to doing the act itself and not the reason for the act. That is correct, Your Honor. The way I would put it is that you have to have a purpose to use the recording for something, and you know what that something is you want to use it for. I want to use it to demand $500 from someone, for example. What we are saying is you do not need to think, I'm taking this recording, and I intend to use it for the state law crime of blackmail. I'll finish my sentence. Finish what you're saying. For which the elements are this, this, this. You do not have to think, I want to commit a crime today. But you do have to know what it is you intend to do with it. And that is why in the complaint we focus on allegations that they knew these tools would disclose, and knowing is also the mens rea for the HIPAA violation itself. Okay. All right, so once again. Yes. So they knew that they, so your argument is they knew that they were going to be used for a commercial purpose, and that knowing that they also similarly knew that that was a HIPAA violation to disclose it for any purpose, including a commercial purpose. The nuance I would draw, Your Honor, is I don't think they actually had to know it was a HIPAA violation. They had to know we are intercepting this information to use it to disclose it to Facebook and Meta, which are third parties. We don't have patient consent, and we're going to get marketing benefits from that. They don't need to know the particular part of HIPAA that violates. Because they are hospitals, presumably based on what I just described, they would know that was a HIPAA violation. But I just want to just draw a distinction that none of the cases require this sort of level of I know the thing I'm going to do is a crime, and I know the exact crime it is. And willfully is the word that the legislature, that Congress uses when it wants to describe that level of intent, and we can see that in the Bryan case out of the United States Supreme Court. Unless the Court has other questions, I'll save the rest of my time for rebuttal. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellee please introduce himself on the record to begin? Yes. Good afternoon, I guess, Your Honors. Adam Bookbinder from Choate Hall and Stewart for Cape Cod Healthcare. Before I dive into the crime tort question, I want to address the context here because I think that's important. The Court's decision in this case will impact not just Cape Cod Healthcare and these plaintiffs. There are 17 nearly identical complaints pending in the District of Massachusetts right now against almost every major healthcare institution in the state. And there are hundreds more similar cases all across the country. But this case is the first one in which a federal court of appeals is going to be able to address this issue in this context. So there are billions of dollars in potential civil liability at stake here and corresponding potential criminal exposure to thousands of employees of each of those institutions. And with that in mind, I'd ask the Court to affirm Judge Stern's dismissal of the ECPA claim in this case because he correctly found that the complaint failed to allege that Cape Cod Healthcare intercepted its communications with the plaintiffs for the purpose of committing a crime or tort. What would plaintiff have to plead in order to survive a 12B6 that wasn't pleaded here? Your Honor... Or are you suggesting there's no way a plaintiff could plead that? No, no, not at all. What the plaintiff would have to plead here is that Cape Cod Healthcare, as Judge Stern's found, that Cape Cod's primary motivation or the determinative factor behind its decision to use these ad-tech tools was to commit a crime or tort. And that standard that the judge applied below comes from this Court's decision in Cassier. It's also been used by the D.C. Circuit, Second Circuit, Ninth Circuit, and district courts all around the country. They've either used this language or the equivalent language. And it's consistent, I suggest, with the Supreme Court's description in Counterman and Bailey of purpose, which is the language in the statute, as the most culpable level in the standard mental state hierarchy and as being a higher level of mens rea than mere knowledge, which my opposing counsel was just discussing. This Court's approach of limiting the crime-tort exception to situations in which the primary motivation for the interception is to commit a crime or tort is also consistent with the ECPA's legislative history. Well, I'm not quite sure. It seems like there's two arguments, one of which may be stronger than the other. The first argument is that you have to have an intent to commit a crime. I'm not sure that the language of the statute bears that out. It seems to be an intent to carry out the act, which is criminal. But then there's a second argument, which I was trying to get to earlier, which is that the act itself has to be your dominant purpose under Cassier. So it seems to me that we could reject your argument on the statute, but still say there needs to be an allegation that the disclosure is really what the defendants here were after. And here, arguably, the disclosure is incidental to other benefits that they were really after. That seems to me to be a better argument than, I want to commit a crime. Well, so, Your Honor, I agree with you on the second part of that, absolutely, that that's what they have to allege, that the primary purpose here was whether it's to commit a crime, as we've articulated, or to do the thing that is a crime, as opposed to getting something that is not criminal, like marketing and analytics benefits. So I agree with you on that. I'd suggest that the purpose language and the way the Supreme Court has interpreted purpose, the mental state that's required there, requires more than just the intent to do an act, and that act happens to be a crime. That would greatly broaden the application here, and given the particular purpose language, purpose to commit a criminal or tortious act, I'd suggest that it should be, as Judge Stearns, as the Second and the Ninth Circuits have found, in courts around the country, that it's the intent to commit a crime. But either way, as you point out... Well, how do you say, someone could say, in a blackmail case, I just wanted to get the money. I wasn't necessarily intending for the primary purpose to be by way of blackmail. Your Honor, so at a sufficiently high level of generality, that's right. I mean, one could say blackmail is designed to get money, and going to work at a job is designed to get money. So is the purpose the same in those two actions? And I'd suggest that it's not. When you know that HIPAA is out there that bars disclosure of that kind of personal information, to then say, well, my primary purpose wasn't to disclose patient information, I just wanted it disclosed so I could get a financial benefit from it. It doesn't make any sense to me. Well, so, Your Honor, I guess I'd say two things here. First of all, the language of the statute talks about purpose, and courts have interpreted that, including this court, saying we're talking about the primary motivation or the determinative factor. So we're talking about something more than just the knowledge that this consequence may follow from this action that you're doing for some other purpose. Well, is that a factual determination that shouldn't be decided on 12b? Well, Your Honor, again, I'd suggest that the Supreme Court in Counterman and Bailey has created a bit of a threshold, even in the 12b context, saying that there are two things that you don't necessarily give credit to in a complaint. One are conclusory legal allegations, which I think we have here, and the other are factual allegations that are not plausible. And it's important, I think, to understand here that we're not talking about some – Well, why wouldn't – if there are disclaimers from the IT companies themselves that say this shouldn't be used for health care, why is that not enough to say, well, they were on notice that the patient information was going to be used beyond what HIPAA says it can be used for? Two responses to that, Your Honor. The legal one, which is, again, I'd suggest knowledge is not enough under the purpose standard. But more practically, we're talking about three to five years ago or beyond, which is when these actions happened. It's important to understand that. And we're talking about tools that Cape Cod Health Care used on its website, as did all other health care systems in the state of Massachusetts, according to the allegations, at least, in the complaints against every single health care system, and more than 200 health care systems around the country that have been sued with exactly the same allegations. We're talking about tools that the government, federal government, requires to be put on most federal agency websites to Google Analytics. And we've got a situation in the amici set this out in great detail in their briefs. We articulate it as well. You've got tools that are on Google Analytics, in particular, more than half of all websites in the country. These are ubiquitous tools. They are everywhere. They're everywhere in health care and in other areas. And in that context, it is, I'd suggest, not plausible to infer that it was Cape Cod Health Care's purpose to put these on in the effort to commit a criminal or tortious act or a crime or tort, whichever formulation of that standard you would use. I want to just take a minute before my time wraps up to do two things. One, to address the commercial carve-out argument that the plaintiffs make, and I'd suggest that, of course, there are crimes like blackmail where the goal is to generate money, and those would fit nonetheless within the crime-tort exception. But this situation is fundamentally different, given how widespread the use of these tools are across all of these sectors. And it's important to remember that notwithstanding this widespread use, no one has ever been prosecuted under either the ECPA or HIPAA for using these tools on a website, which tells you that the government doesn't believe they violate the statute and that, again, it is not plausible to suggest that it was. Let me say, counsel, sometimes the government doesn't prosecute because it's not their current policy or it's got other priorities. So depending on district to district, some districts you see it's drugs, weapons, child pornography. Maybe that's not priority number one. There's limited resources, but it doesn't mean it's not a crime. Of course, Your Honor, that's true. But we're talking here about never, never. As far as we have determined or any of the amici, and they articulate it in their briefs as well, no one has ever been prosecuted, and I suggest that's different than a matter of prosecutorial priorities and suggests that when you're looking now to infer purpose in the use of this tool by a health care system, whose goal is to provide health care and information to its potential patient population, that given that no government entity has ever prosecuted anyone, it's not reasonable to infer that they had a criminal or tortious purpose. The last thing I want to mention. That doesn't make any sense. You can provide health care information to your patients and related providers who have an interest in that patient's health, but that's different from making it available to folks who can zero in on that information to target them for specific advertising. And as for the financial impact, I understand that the challenge may have significant financial impact, but I guess I think about the three-courts tariff case. It has tremendous financial impact, and it didn't seem to bother the Supreme Court in making its decision, so I'm not sure where we go with that argument. So, Your Honor, fair point. I would make the distinction here that we are talking here about this is primarily a criminal statute. It has a civil cause of action. It has never been enforced criminally in this context, and what you're talking about here is potential. First of all, you're creating a path for criminal exposure, a felony, and up to five years in prison for anyone at any of these hospitals involved in putting these tools on the website or in the marketing efforts at all. That's the first piece. And secondarily, you're talking about creating existential civil liability because the ECPA, unlike the state law cause of action that plaintiffs are proceeding with, currently in state court in this case, the ECPA has up to $10,000 in potential civil damages exposure for every website visitor. These healthcare or hospital sites get hundreds of thousands of visitors, which adds up to potentially hundreds of millions or billions of dollars in civil damages. In that context, given the ubiquity of these tools across healthcare, government, and private industry, I'd suggest that it's not plausible to infer an intent to commit a crime or tort or to do an action which is a crime or tort to Cape Cod's decision to use these tools, and I'd ask the Court to affirm Judge Stern's decision. You keep going to the criminal and the U.S. attorney has never prosecuted this type of case, but this is a civil case, so the plaintiff here should just surpass the 12B6. It doesn't have to be proven beyond a reasonable doubt. It's by a preponderance. Absolutely, Your Honor. Certainly it's a different standard, and I'm not suggesting that that's determinative, but I think it is relevant to trying to understand the purpose and the state of mind of institutions that use these tools, particularly you're talking, again, three to five years ago, in light of the fact that the government hadn't ever prosecuted or even articulated at that time any guidance or anything else that would suggest that they shouldn't be using them in this context. Okay. Thank you, counsel. Two minutes for rebuttal. Please do reintroduce yourself on the record to begin. Kelsey White on behalf of the plaintiff's appellants. I want to go back quickly to Judge Dunlap's question about this dominant purpose, and I'd also direct the Court to Appendix 777, Paragraph 159. I won't read the whole paragraph, but it ends, there's a sentence before it ends, defendant intentionally shares the PII, PHI of their patients with Facebook in order to gain access to the benefits of the Metapixel tool. And so I think this is just like a stealing trade secrets example because there's not actually two purposes. There's a chain of purposes. So first my purpose is to give something, and then the next thing I am trying to accomplish by doing that is a commercial benefit. And so these aren't alternatives. It's a sequence of purposes. So if what's happened here, this exchange of information for a benefit, isn't sufficient, I don't understand how sort of the trade secrets component or blackmail or these other examples where you're doing something in order to get something wouldn't also be impacted. And that gets to a larger point about there is certainly an impact on all of these data privacy cases with what the Court does here, but there's also an impact on the Wiretap Act itself, which has an impact on things far outside this case like suppression hearings. So I do think looking at the suppression context is critical, and the thing that is key in all of this is that it's an evidentiary determination. Yes, go ahead. I'd just like to ask you about kind of the impact on the HIPAA analysis. I appreciate the point that you're just making. What do we make of the fact that there's no private right of action in HIPAA? Should that matter for us? Does it seem like an end around to a result that Congress decided not to open up? Congress could have said, yeah, you can sue for HIPAA violations and receive unlimited damages like you're now proposing. If I may answer your question, Your Honor, I don't think it does, and the reason is that Congress decided to create a private right of action in the Wiretap context, and so there's tons of other HIPAA violations that happen that do not involve ad tech, right? It's the interception is what's creating the problem for the hospitals, and not all of them do this, and it's also hospitals, not all businesses. We are not talking about ad tech across every website is a Wiretap violation. That's not what we're talking about at all. So I do think this is a narrower type of claim, and so it is not creating a widespread civil cause of action for HIPAA violations. The last point I'll make, I know I'm out of time, the penalties. My opponent brought up sort of the scope of Wiretap penalties. I think it's important. The 4th, 11th, 8th, and 6th Circuit have all held that that may in the statute describing penalties is discretionary. So these are not automatic. District Court will be able to deal with all of those arguments if and when we get there. We would ask the court to reverse and remand. Thank you.